UNITED STATES STEEL CORPORA-
TION, Petitioner,

v.

ENVIRONMENTAL PROTECTION
AGENCY, Respondent.

The State of Minnesota, Minnesota
Pollution Control Agency,
Intervenor-Respondent.

No. 78-1302.

United States Court of Appeals,
Eighth Circuit.

Submitted March 10, 1981.

Decided May 20, 1981.

Edward T. Fride (argued), Raymond L.
Erickson and Richard J. Leighton of Hanft,
Fride, O'Brien & Harries, P.A., Duluth,
Minn., for petitioner.

Donald W. Stever, Jr., Chief, Pollution
Control Section, Ronald C. Hausmann, Atty.
Dept. of Justice, Washington, D. C. (ar-
gued), Christina Kaneen, Atty., U. S. Envi-
ronmental Protection, Washington, D. C.,
for respondent.

Warren R. Spannaus, Atty. Gen., State of
Minnesota, St. Paul, Minn., Alan R. Mitchell
Sp. Asst. Atty. Gen. (argued), Roseville,
Minn., for State of Minnesota and Minneso-
ta Pollution Control Agency.

Before GIBSON, Senior Circuit Judge, and BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

United States Steel Corp. (U.S. Steel) petitions this court for review of a final rule promulgated by the Environmental Protection Agency (EPA)[1] designating portions of the Mesabi Iron Range in Northern Minnesota as exceeding the secondary national ambient air quality standards for total suspended particulates.[2]

After nearly three years of unsuccessful attempts by the parties to resolve this controversy out-of-court,[3] U.S. Steel now urges us to join the Third, Fifth, Ninth, and District of Columbia Circuits in setting aside the rule because of the EPA's failure to adhere to the notice and comment requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 553 (1976). Respondent EPA and intervenor-respondent Minnesota Pollution Control Agency (MPCA) urge our adoption of the Sixth and Seventh Circuits' determination that the "good cause" exception in 5 U.S.C. § 553(b)(B) excused the EPA's noncompliance with the notice and comment requirements of section 553.

We conclude that the majority position more appropriately reflects the statutory and policy considerations underlying the APA and the Clean Air Act.[4] Accordingly, we grant the petition for review and remand the case to the EPA with instructions to afford U.S. Steel proper notice and opportunity to comment on those designations contested in this case and to give full consideration to all comments and relevant

1. The EPA initially published the final rule on March 3, 1978, in 43 Fed.Reg. 8962 (1978). On October 5, 1978, the EPA republished the rule with amendments in 43 Fed.Reg. 45,993 (1978). The current version of the rule, as it pertains to the State of Minnesota, has been codified in 40 C.F.R. § 81.324 (1979).

2. The Mesabi Iron Range designations originally challenged by U.S. Steel have undergone several modifications since the filing of this petition for review. The March 3, 1978 final rule originally designated an 80-mile long by 30-mile wide region in Itasca and St. Louis Counties as a "nonattainment" area for total suspended particulates. 43 Fed.Reg. 8962, 9005 (1978). The October 5, 1978 amendments, however, redesignated all of Itasca County and large portions of St. Louis County as "attainment" areas. 43 Fed.Reg. 45,993, 45,997–98, 46,010 (1978). Consequently, these areas no longer remain the subject of U.S. Steel's petition for review. The October 5 amendments also redesignated as "nonattainment" an area previously designated "attainment" by the March 3 rule. U.S. Steel's petition, however, does not challenge the designation for this area, although the EPA would have us include this area in the description of the disputed areas. Since the October 5 amendments, U.S. Steel has voluntarily excluded three additional townships in St. Louis County from its petition for review. Thus, only the nonattainment designations for a 25-by-25 mile area, as listed by township and range number, remain in dispute:

T57N, R17–19W;
T57N, R20, Section 7;
T58N, R16–18W;
T59N, R16–18W.

3. U.S. Steel filed its petition for review on April 29, 1978. On June 28, this court granted the EPA's motion for a stay of all proceedings on the petition until the agency had an opportunity to evaluate comments submitted on the original designations and determine whether changes in those designations would be appropriate. In light of these comments, the EPA redesignated portions of the Mesabi Iron Range but declined to alter its original designation for those areas in which U.S. Steel conducts its operations. On November 9, 1978, U.S. Steel consented to another stay of proceedings pending completion of a newly commissioned study of air quality in the Mesabi Iron Range. Thereafter, this court ordered several extensions of the November 9 stay to permit further evaluation of the study data. With the results of that study still uncertain and with no substantial progress made toward a resolution of the dispute, U.S. Steel informed this court on October 22, 1980, that the parties desired to resume proceedings on the petition for review. Accordingly, this court set a briefing schedule for the parties on November 5, 1980, and we heard oral argument at the March 1981 session of this court.

4. This court has jurisdiction to rule upon U.S. Steel's petition for review under § 307 of the Clean Air Act Amendments of 1977, 42 U.S.C. § 7607 (Supp. I 1977). *See Western Oil & Gas Association v. United States Environmental Protection Agency*, 633 F.2d 803, 806–08 (9th Cir. 1980); *Sharon Steel Corp. v. Environmental Protection Agency*, 597 F.2d 377, 379 n.3 (3d Cir. 1979). Neither the EPA nor the MPCA challenges this court's jurisdiction to review the petition.

data received during the period for comment. Pending completion of these proceedings, the existing designations will remain in effect, and any revised designations will be substituted for the present designations at the conclusion of the deliberative process.[5]

## I. *Background.*

In the Clean Air Act Amendments of 1970, Congress directed the Secretary of Health, Education, and Welfare to promulgate national ambient air quality standards for any pollutant or combination of pollutants that may contribute substantially to endangerment of the public health or welfare. Pub.L. No. 91–604, 84 Stat. 1676 (codified at 42 U.S.C. §§ 7401–7642 (Supp. I 1977)) (formerly codified at 42 U.S.C. §§ 1857–1858). *See* National Primary and Secondary Ambient Air Quality Standards, 40 C.F.R. §§ 50.1–.11 (1978). By 1976, however, many areas of the country had failed to achieve the air quality levels mandated by the Secretary's standard. *See* H.R.Rep. No.95–294, 95th Cong., 1st Sess. 207–11, *reprinted in* [1977] U.S.Code Cong. & Ad. News 1077, 1286–90. As a result, Congress enacted the Clean Air Act Amendments of 1977, Pub.L. No. 95–95, 91 Stat. 685 (codified at 42 U.S.C. §§ 7401–7642 (Supp. I 1977)), which set forth a new deadline and established a new implementation process for the states to comply with federal air quality standards.

As the first step in the new implementation process, Congress required each state to assess its air quality against the national standards. Within 120 days of enactment of the Amendments, that is by December 3, 1977, each state was required to identify for each of five criteria pollutants all areas in the state which had attained the standards ("attainment areas"), all areas which had not attained the standards ("nonattainment

areas"), and all areas which could not be immediately classified for lack of sufficient air quality data ("unclassifiable areas"). Within 60 days thereafter, that is by February 3, 1978, the Amendments directed the EPA to review the state classifications, make necessary modifications, and promulgate attainment status designations for all fifty states and seven territories. On the basis of these designations, the states were to revise their implementation plans by January 1, 1979, and to meet national air quality standards in each nonattainment area by December 31, 1982.

As the course of events would have it, however, both the states and the EPA fell behind the statutorily prescribed timetable. Minnesota, for example, failed to submit its list of recommended designations for all areas in the state until December 31, 1977, nearly a month after the December 3 statutory deadline. The EPA, in turn, failed to promulgate a final rule containing air quality designations for the state until March 3, 1978, a month after the date prescribed in the 1977 Amendments. Moreover, in his haste to issue a final rule within the statutory deadline set by Congress, the Administrator of the EPA dispensed with the usual notice and comment requirements of the APA, 5 U.S.C. § 553, before adopting the rule.[6]

As justification for dispensing with these requirements, the Administrator cited the "good cause" exception of section 553(b)(B), which excuses prior notice and comment

> when the agency for good cause finds (and incorporates the finding in a brief statement of reasons therefor in the rules issues) that notice and public procedure thereon are impracticable, unnecessary or contrary to the public interest. [5 U.S.C. § 553(b)(B).]

In invoking this exception, the Administrator stated:

---

5. Because of our disposition of this petition on the procedural grounds advanced by U.S. Steel, we need not address its alternative contention that the Mesabi Iron Range designations were arbitrary, capricious, or an abuse of discretion.

6. Before issuing a final rule, an agency must publish a "[g]eneral notice of proposed rule making * * * in the Federal Register," 5 U.S.C. § 553(b), and "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments," 5 U.S.C. § 553(c).

The States are now preparing revisions to their State implementation plans (SIPs) as required by sections 110(a)(2)(I) and 172 of the Act. This enterprise, which must be completed by January 1, 1979, requires that the States have immediate guidance as to the attainment status of the areas designated under section 107(d). Congress has acknowledged this by imposing a tight schedule on the designation process and requiring EPA to promulgate the list within 180 days of the enactment of the amendments. Under these circumstances it would be impracticable and contrary to the public interest to ignore the statutory schedule and postpone publishing these regulations until notice and comment can be effectuated. For this good cause, the Administrator has made these designations immediately effective. [43 Fed.Reg. 8962.]

Nevertheless, the Administrator offered to receive public comment for sixty days after promulgation of the rule:

The Agency recognizes, however, the importance of public involvement in the designation process. It is therefore, soliciting public comment on this rule by May 2, 1978.

Comments received will be considered carefully and revisions to the designations will be made where appropriate. [*Id.*]

II. *Discussion.*

Petitioner contends that the Administrator lacked "good cause" under section 553(b)(B) to dispense with the notice and comment requirements of section 553 before promulgating the EPA's final list of air quality designations. Petitioner further contends that the Administrator's provision for *post hoc* comment on the designations did not cure the agency's failure to provide prior notice and opportunity to comment.

As previously noted, six circuits have ruled on these contentions. The Third, Fifth, Ninth, and District of Columbia Circuits have sustained the procedural objections advanced by U.S. Steel in this case. *Western Oil and Gas Association v. United States Environmental Protection Agency,* 633 F.2d 803 (9th Cir. 1980); *State of New Jersey, Department of Environmental Protection v. United States Environmental Protection Agency,* 626 F.2d 1038 (D.C.Cir. 1980); *United States Steel Corp. v. United States Environmental Protection Agency,* 595 F.2d 207 (5th Cir.), *modified on rehearing,* 598 F.2d 915 (1979); *Sharon Steel Corp. v. Environmental Protection Agency,* 597 F.2d 377 (3d Cir. 1979). Two circuits have upheld the rule over these objections. *Republic Steel Corp. v. Costle,* 621 F.2d 797 (6th Cir. 1980); *United States Steel Corp. v. United States Environmental Protection Agency,* 605 F.2d 283 (7th Cir. 1979), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980).

■ We have carefully reviewed these rulings and concluded that further discussion of the procedural objections raised in U.S. Steel's petition for review would add little to these courts' cogent and thorough treatment of the issues.[7] Rather than retrace these discussions, therefore, we rely on the reasoning of the Third, Fifth, Ninth, and District of Columbia Circuits to hold that the Administrator erred in failing to adhere to the notice and comment requirements of the APA. In particular, we agree with the Fifth Circuit's discussion of the statutory deadlines as insufficient reason to adopt the final rule without prior notice and comment.

[T]he mere existence of deadlines for agency action, whether set by statute or court order, does not in itself constitute good cause for a § 553(b)(B) exception. The deadline is a factor to be considered, but the agency must still show the impracticability of affording notice and comment. Here, for example, the EPA gives no explanation of why it could not

---

**7.** We especially note the detailed discussion of the Third, Fifth, Sixth, and Seventh Circuits' rulings by the District of Columbia Circuit in *State of New Jersey, Department of Environ-* *mental Protection v. United States Environmental Protection Agency,* 626 F.2d 1038 (D.C. Cir.1980).

at least have published the [state's] initial list upon receipt and accepted comments during the time it was reviewing the list. This would have afforded petitioners some warning of the imminent designations and allowed them opportunity to influence the agency's action. [*United States Steel Corp. v. United States Environmental Protection Agency, supra,* 595 F.2d at 213 (citations omitted).]

We also agree with the Third Circuit that the Administrator's offer to receive comments for sixty days after promulgation of the rule cannot substitute for the prior notice and comment required by the APA.

Provision of prior notice and comment allows effective participation in the rulemaking process while the decisionmaker is still receptive to information and argument. After the final rule is issued, the petitioner must come hat-in-hand and run the risk that the decisionmaker is likely to resist change. [*Sharon Steel Corp. v. Environmental Protection Agency, supra,* 597 F.2d at 381.]

This holding, however, does not end our inquiry. We must yet determine what relief will best remedy the injury suffered by U.S. Steel but minimize any frustration of the purposes of the Clean Air Act.

The four circuits that have sustained procedural challenges to the EPA's nonattainment designations have struggled with the question of appropriate relief to the affected parties. The Third Circuit left the final rule in effect except as to the specific designations contested in the case and as applied to the petitioners. *Sharon Steel Corp. v. Environmental Protection Agency, supra,* 595 F.2d at 381–82. The Fifth Circuit also set aside only those nonattainment designations challenged by the petitioners; nevertheless, the court permitted the EPA to

apply its "offset policy"[8] against petitioners under certain circumstances. *United States Steel Corp. v. United States Environmental Protection Agency, supra,* 598 F.2d at 916, modifying 595 F.2d at 215–18. The District of Columbia Circuit, like the Third and Fifth Circuits, set aside the challenged designations as to the petitioners but also retained jurisdiction over the case to allow the parties "to submit motions to us where necessary to secure the prompt and proper accomplishment of the mandate of the Clean Air Act." *State of New Jersey, Department of Environmental Protection v. United States Environmental Protection Agency, supra,* 626 F.2d at 1050. In the last of the cases, the Ninth Circuit decided to leave the challenged designations in effect during the period necessary for petitioners to receive proper notice and opportunity to comment and for the EPA to substitute any revised designations for the existing ones upon completion of the deliberative process. *Western Oil and Gas Association v. United States Environmental Protection Agency, supra,* 633 F.2d at 812–13.

These remedies, although somewhat diverse, reflect the power of courts of appeals in determining petitions for review to fashion the relief most appropriate to the circumstances of the case before the court. *See Rodway v. United States Department of Agriculture,* 514 F.2d 809 (D.C.Cir.1975); *Indiana & Michigan Electric Co. v. Federal Power Commission,* 502 F.2d 336 (D.C.Cir. 1974), *cert. denied,* 420 U.S. 946, 95 S.Ct. 1326, 43 L.Ed.2d 424 (1975); *Duquesne Light Co. v. EPA,* 481 F.2d 1 (3d Cir. 1973).

Our examination of the facts and circumstances of this case convinces us to adopt a remedy similar to the one employed by the Ninth Circuit in *Western Oil and Gas Asso-*

---

**8.** The primary consequence of a nonattainment designation arises from the EPA's "offset policy" on new pollution sources in a nonattainment area. 41 Fed.Reg. 55,524 (interpretive ruling), *adopted,* Clean Air Act Amendments of 1977, Pub.L. No. 95–95, § 129(a), 91 Stat. 745 (uncodified). This policy places strict limitations on the construction of new facilities, or the modification of existing facilities, that will increase the overall level of pollution emissions

in a nonattainment area. Construction or modification in a nonattainment area will be permitted only if the increase in emissions attributable to the new source would be offset by a greater decrease in emissions attributable to existing sources. Furthermore, construction of a new source of emissions may be disapproved if it will contribute to a violation of air quality standards in a nearby area.

*ciation v. United States Environmental Protection Agency,* 633 F.2d 803, 812–13 (9th Cir. 1980). We set aside the final rule only as to the specific designations contested in this petition, but leave these designations in effect pending completion of further administrative proceedings in accordance with the APA. On remand, the EPA should afford U.S. Steel proper notice and opportunity to comment on the designations proposed by the agency for the contested areas. Thereafter, the EPA should expeditiously, but fully, consider any comments received on the proposed designations and, upon completing its deliberative process, immediately substitute any revised designations for the existing ones.

The EPA urges this court to resolve the merits of the Mesabi Iron Range designations rather than remand the petition for further administrative proceedings on the challenged designations. In essence, it argues that the record has been fully developed for judicial review during the three-year period in which this court stayed proceedings on U.S. Steel's petition for review. *See* note 3 *supra.* We disagree with this approach. The EPA's solicitation and evaluation of *post hoc* comment cannot substitute for the opportunity of prior notice and comment, as required by the APA. Further, the record does not contain the results of the study commissioned by the MPCA. Much of that work has been completed, and administrative evaluation of that data may lead to a designation or redesignation of the disputed areas based upon current information.[9] Under these circumstances, we decline to pass upon the merits of the challenged designations rather than defer to agency expertise on remand.

■ U.S. Steel urges us to set aside the challenged designations immediately rather than leave them in effect pending completion of further proceedings on remand.

The record indicates, however, that of the three mining companies in the Mesabi Iron Range who challenged the EPA's initial nonattainment designations, only U.S. Steel did not submit detailed information to support its claim that the designations should be modified. Until recently, in fact, U.S. Steel had not submitted a formal redesignation request to the MPCA.[10] It appears, therefore, that U.S. Steel has elected to rest its challenge to the final rule primarily on procedural grounds rather than on the merits of the nonattainment designations. Under these circumstances, we deem it appropriate to leave the challenged designations in effect until further administrative proceedings have been completed.

U.S. Steel also argues that unless this court immediately sets aside the challenged designations, the EPA and MPCA will feel no compulsion to act expeditiously on remand. We do not think this objection is well taken. Nevertheless, we direct the EPA on remand to promptly hear and resolve the existing controversy and to consider U.S. Steel's comments without regard to the nonattainment designations that we have permitted to remain in effect pending further administrative proceedings.

### III. *Conclusion.*

In summary, we conclude that the Administrator of the EPA lacked good cause under 5 U.S.C. § 553(b)(B) to dispense with the notice and comment requirements of section 553 before adopting the March 3, 1978 final rule, as amended. Accordingly, we grant U.S. Steel's petition for review and remand the case for further proceedings in conformity with this opinion.

---

**9.** In this regard, we rely on the MPCA's representations that it will soon complete its evaluation of the study and will afford U.S. Steel every opportunity to participate in the deliberative process.

**10.** We note, moreover, that the additional data and redesignations requests submitted by the other two mining companies resulted in the EPA's amendments of its original nonattainment designations. *See* 43 Fed.Reg. 45,993, 45,997–98, 46,010 (1978).