**Sam HEDGE, Jim Stengrim, William Decker, Lowell Nelson, individually, on behalf of themselves and others similarly situated, Plaintiffs,**

v.

**Richard E. LYNG, Secretary of the United States Department of Agriculture; Vance Clark, Administrator of the Farmers Home Administration; Russ Bjorhud, Minnesota State Director of the Farmers Home Administration, Defendants.**

Civ. No. 4–86–610.

United States District Court,
D. Minnesota,
Fourth Division.

June 19, 1987.

James T. Massey, and Juliet M. Tomkins, Farmers' Legal Action Group, St. Paul, Minn., for plaintiffs.

William Robert Irvin, Dept. of Justice, Civil Div., Washington, D.C., for defendants.

Mark Levinger, Sp. Asst. Atty. Gen., St. Paul, Minn., for amicus curiae State of Minnesota, but did not participate.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Farmers Sam Hedge, Jim Stengrim, William Decker, and Lowell Nelson bring this action for injunctive and declaratory relief against the Secretary of Agriculture and the Administrator and State Director of the Farmers Home Administration (FmHA). Plaintiffs challenge the legitimacy of regulations governing FmHA County Commissioner elections and of the elections themselves. The first amended complaint alleges violations of the Food Security Act of 1985, the Administrative Procedures Act (APA), and the County Committee regulations themselves. It also alleged denial of constitutional rights to equal protection and freedom of association. The matter is now before the court on defendants' motion to dismiss for failure to state a claim.

*Background*

The pertinent facts are substantially undisputed. FmHA is the federal agricultural and rural development agency. It

is the lender of last resort for farmers and ranchers seeking to finance their operations or improve their property. 7 U.S.C. §§ 1921–2000. Wherever FmHA operates its farm loan programs, it must establish a three member "county committee." 7 U.S. C. § 1982(a). These committees have numerous functions, including determining eligibility for certain types of loans, making recommendations regarding "problem cases" and application for compromise, adjustment or cancellation of debts, and advising the FmHA county supervisor on certain matters. 7 C.F.R. § 2054.1103(a). Certification by the county committee is a prerequisite for obtaining certain loans. *See e.g.* 7 C.F.R. §§ 1941.33 and 1943.33.

Until 1986, the Secretary of Agriculture (the "Secretary") appointed all three members of each county committee. 7 U.S.C. § 1982 (amended 1985). Under the Food Security Act of 1985, Pub.L. 99–198, 99 Stat. 1354, however, two of the three county committee members are to be elected by the farming community:

In each county or area in which activities are carried out under this chapter, there shall be a county committee composed of three members. Two members shall be elected, from among their number, by farmers deriving the principal part of their income from farming who reside within the county or area, and one member, who shall reside within the county or area, shall be appointed by the Secretary for a term of three years. At the first election of county committee member under this subsection, one member shall be elected for a term of one year and one member shall be elected for a term of two years. Thereafter, elected members of the county committee shall be elected for a term of three years. The Secretary, in selecting the appointed member of the county committee, shall ensure that, to the greatest extent practicable, the committee is fairly representative of the farmers in the county or area. The Secretary may appoint an alternate for each member of the county committee. Appointed and alternate members of the county committee shall be removable by the Secretary for cause. The Secretary

shall issue such regulations as are necessary relating to the election and appointment of members and alternate members of the county committees.

As required by statute, the Secretary, acting through FmHA, developed regulations. He did not, however, comply with the general APA procedure, which requires a notice of proposed rule-making and a comment period before final regulations are published. Rather, without notice, the Secretary published "interim final rules" on May 22, 1986. Under these regulations, FmHA borrowers and their spouses and children are not eligible for committee positions. 7 C.F.R. § 2054.1104(f). Persons who are political party officers or employees or "active in the management or affairs of any political club organization, or committee" are also ineligible. 7 C.F.R. § 2054.1104(d).

The interim final regulations also provide that the county committee elections must be held in June, § 2054.1105(a), and that the period for nominating by petition "should begin 45 days and end 20 days before election." § 2054.1111(b)(1). The opportunity to nominate is to be announced at least in local publications of general circulation. § 2054.1111(b)(2). Nominating petitions require three signature, but nominees may sign their own petitions. § 2054.1111(b)(4). No one may sign more than one nominating petition. *Id.*

On May 28, 1986, the Administrator of FmHA (the "Administrator") issued a "Procedure Notice" adopting the May 22 regulations and setting a calendar for the 1986 county committee elections. The county supervisors were to publish notice of the nominating period by Thursday, June 5, 1986, but to accept petitions only until Tuesday, June 10, 1986.

The plaintiffs assert that they were entitled to nominate themselves or others under the statute, but prevented from doing so by the regulations and procedure notice. They challenge the regulations as unconstitutional and contrary to both the Act and the APA. They challenge the elections held pursuant to the procedure notice as

unconstitutional, contrary to the APA, and contrary to the challenged regulations. Defendants respond that the ineligibility of certain groups for committee membership is both necessary and reasonable and that congressional and agricultural time constraints both required an admittedly rushed 1986 election calendar.

*Discussion*

On a motion to dismiss, the court must take as true the allegations in the complaint and view the facts in the light most favorable to the plaintiff. *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed. 2d 163 (1980); *Native American Council of Tribes v. Solem,* 691 F.2d 382, 384 (8th Cir.1982). Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784 (8th Cir.1979).

*Count 1*

■ Count 1 of the first amended complaint asserts that regulations violate the statute by excluding FmHA borrowers, their spouses and children, and politically "active" persons from eligibility for county committees. Plaintiffs rely on 7 U.S.C. § 1981a. That statute directs that two members of each committee "be elected, from among their number, by farmers deriving the principal part of their income from farming who reside within the county or area." Plaintiffs assert that 7 C.F.R. § 2054.1104(d) (politically active persons ineligible) and § 2054.1104(f) (borrowers and immediate families ineligible) are contrary to this language, arbitrary and capricious, and therefore invalid under the APA, 5 U.S.C. § 700 (standard of judicial review of regulatory action).

a. *The exclusion of borrowers and their immediate families.*

Defendants categorize committee members as FmHA employees. Such employees are generally ineligible for FmHA loans. They maintain that borrowers and their immediate families have long been barred from committee service and that this rule is necessary to avoid "even the appearance of impropriety." Plaintiffs challenge the characterization of committee members as FmHA employees. They further argue that nothing in the statute permits defendants to except groups of otherwise qualified potential candidates and that existing statutory and regulatory provisions guard against any impropriety.

The parties agree that the court's scope of review is narrow. They also agree that the relevant definition of employee is found at 5 U.S.C. § 2105, which provides in relevant part:

"employee" ... means an officer or individual who is

(1) appointed in the civil service by one of [numerous government officials] acting in an official capacity ...

(2) engaged in the performance of a Federal function under authority of law or an Executive act; and

(3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

There are three elements to the statute— appointment, federal function, and supervision—and "all must be complied with to achieve the status of employee." *McCarley v. Merit Systems Protection Board,* 757 F.2d 278, 280 (Fed.Cir.1985).

■ The parties agree that the elected committee members perform a federal function, but they disagree about whether they are "appointed" and "subject to supervision" under § 2105. Defendants assert in a conclusory fashion that both tests are satisfied. They argue that elected committee members are "appointed" because defendants use the term "appointments" in reference to the members. 7 C.F.R. § 2054.1126. They do not, however, respond adequately to the plaintiffs' facially persuasive argument that being "appointed" is inconsistent with being elected. Defendants consider the elected members "subject to supervision" because FmHA officials can call them to meetings, seek their

advice, and certify that they are entitled to compensation.[1] These actions are not inherently conclusive evidence of supervision, however, and defendants have provided no authority to suggest that they are sufficient evidence under 5 U.S.C. § 2105. Nor do defendants respond to the plaintiffs' apparently reasonable reliance on Congressional intent. The decision to replace appointed members with elected ones may well suggest a desire for increased independence arguably inconsistent with agency "supervision." *See* H.Rep. 99–271, Part 1, 99th Cong., 1st Sess. 100–101 (Sept. 13, 1985), U.S.Code Cong. & Admin.News 1985, 1103, 1204–1205 ("The current appointive system allows the Secretary a free hand in selecting members of the committee. Although the many fine and dedicated county committee members now serving are to be commended for their work, *it is the system itself which precludes the sort of independence which is needed.*") (emphasis added).[2] In short, it is not clear that elected committee members can properly be classified as FmHA employees.

It is also not clear that defendants can, consistent with 5 U.S.C. § 706, justify excluding borrowers and their immediate families from committee service. The statute itself guards against committee members acting on their own applications or those of extended family members. It is not clear that there is any basis for a rule that goes beyond the statutory language to exclude so large a part of FmHA's constituency. On the current record, it does not appear that plaintiffs have no chance of prevailing on this claim, and dismissal is therefore inappropriate.

1. Defendants also argue that the Administrator can terminate the services of elected committee members, but this does not appear to be consistent with the statute, which provides that the Secretary may remove appointed (but not elected) members for cause. 7 U.S.C. § 1982(a).

2. As plaintiffs note, the House Committee went on to compare the committee system of the Agricultural Stabilization and Conservation Service (ASCS) favorably with the old FmHA system:

b. *The Exclusion of Politically Active Persons*

Defendants argue that § 2054.1104(d) merely adopts the Hatch Act, which bars partisan political participation by all FmHA employees, including elected county committee members. Plaintiffs' response is two-pronged: first, elected committee members are not "employees" and therefore not bound by the Hatch Act. Second, even if the members are employees bound by the Hatch Act, the regulations are unjustifiable because they restrict not only partisan activity, but all political involvement.

The Hatch Act applies to "employee[s] in an Executive agency," 5 U.S.C. § 7324(a). If plaintiffs are not employees, as they arguably are not, they are not bound by the Hatch Act. Dismissal of this claim is inappropriate at this time, and it is unnecessary to reach plaintiffs' alternative argument.

*Count 5*

Count 5 asserts that the Secretary's publication of immediately effective interim final rules violated 5 U.S.C. § 553. This statute requires that a "[g]eneral notice of proposed rule making be published in the Federal Register," *id.* at § 553(b), that "interested persons [have] an opportunity to participate in the rule making" *id.* at § 553(c), and that the "required publication ... be made not less than 30 days before its effective date." *Id.* at § 553(d). Plaintiffs assert that the improperly promulgated regulations should be set aside.

Defendants concede that they did not comply with these regulations, but assert that they were covered by valid exceptions

The Agricultural and Conservation Service's committee system, by contrast, provides through its elective structure a body of knowledgable local farmers who are accountable to their peers, and whose judgment is respected by virtue of both their independence from USDA's administrative structure and their accountability to the farmers of the county. The ASCS system does not work perfectly, but the local control it exemplifies is the direction in which FmHA needs to move.
ACSC participants are not barred from committee service.

to the general rule.[3] Notice of a proposed rule is not required

> when the agency for good cause finds (and incorporates the finding and a brief statement of the reasons therefore in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest

5 U.S.C. § 553(b)(B). The requirement that a rule be published not less than 30 days before its effective date is also waived "for good cause found and published with the rule." Id. at § 553(d)(3).

When he published the challenged regulations, the Secretary asserted that he had good cause for failure to comply with the usual APA requirements and provided a statement of reasons:

> Any delay in implementing this rule would be contrary to the public interest. The FmHA County Committee process is integral to the Agency's farm loan programs. Terms for ... will be expiring at the end of June. If the election procedures are not in place in time for this transition, the Agency will be faced with over 2,000 vacancies.... With the expectation of receiving many more farm loans to process this year than last year, work ... will be greatly increased.... [T]emporary committee members [would] mean a lack of continuity in the process and possible unacceptable delays in dealing with the increased workload. Should this occur, it would place a significant hardship on the farm communities. In addition, the expiration of terms ... is set to take place after farmers have completed spring planting. A delay in the election process would push the elections into a time period that would be disruptive to normal farm activities. A delay would also result in disruption to future election cycles. Furthermore, pursuant to the [APA] it is found upon good cause that notice and other public procedure with respect to this action are impracticable; and good cause is found for making

this interim rule effective less than 30 days after publication....

51 Fed.Reg. at 18763 (May 22, 1986). Plaintiffs find this statement of reasons both incorrect and inadequate.

The good cause exception is not an "escape clause which may be arbitrarily exercised but requires legitimate grounds supported in law and fact by the required finding." *United States v. Gavrilovic*, 551 F.2d 1099, 1104 (8th Cir.1977) (citation omitted). While an agency that voluntarily agrees to comply with the APA may interpret "good cause somewhat more broadly, *see Alcaraz v. Block*, 746 F.2d 593 (9th Cir.1984), the fact that "the agency itself adopted the requirements of section 553(b) and (c) ... does not mean that it may follow the procedure arbitrarily, or use 'good cause' to manipulate the procedures to its own uses." Id. (citing *Rodway v. United States Department of Agriculture*, 514 F.2d 809, 814 (D.C.Cir.1975)). The "good cause" exceptions are to be "narrowly construed and only reluctantly countenanced." *Alcaraz*, 746 F.2d at 612 (citations omitted).

■ Legitimate grounds for invoking the exception are "urgency of conditions coupled with demonstrated and unavoidable limitations of time." *Northwest Airlines, Inc. v. Goldschmidt*, 645 F.2d 1309, 1320 n. 16 (8th Cir.1981) (citation omitted). This is an inherently factual inquiry, seldom susceptible to determination on a motion to dismiss. Here, there are numerous factual questions which make dismissal inappropriate. Defendants assert that they had only five months to develop these regulations, and cite cases finding even longer periods of time acceptable, but such an evaluation clearly depends on the complexity of the task. *See, e.g., Council of Southern Mountains, Inc. v. Donovan*, 653 F.2d 573 (D.C.Cir.1981) (factors justifying regulatory action, taken without notice and comment, included need for testing, difficulties encountered, and clear and consistent efforts to publish proposed regulations within APA requirements). It is not obvious

---

**3.** Under § 553(a)(2), the general rule making provisions do not apply "to the extent that there is involved ... a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." The Secretary of Agriculture has, however, directed that the department comply with the APA. 36 Fed. Reg. 13804 (July 24, 1971).

that defendants needed five months to develop the relatively simple regulations at issue here.

Moreover, defendants' assertion that regulations had to be issued within the five months is at least arguable. An externally imposed deadline may support an agency's claim of good cause, although the "mere existence of a deadline, whether set by statute or court order, does not in itself constitute good cause." *United States Steel Corp. v. E.P.A.*, 649 F.2d 572, 575 (8th Cir.1981) (citations omitted). "Urgent necessity," *Northwest Airlines*, 645 F.2d at 1321, may substitute for such a set deadline. Here, however, defendants' "deadline" was not set by statute or real emergency. They claim there would have been a "lack of continuity" if temporary committee members were used, which might cause unacceptable delays and hardship. They state that postponing the election would have disrupted the traditional election calendar far into the future. This is a factual area, and defendants have not shown that they are entitled to dismissal of count 5.

*Count 4*

Plaintiffs also challenge the validity of the 1986 county committee elections which were held after a nominating period of only five days. They argue that defendants' failure to provide the requisite 25–day nominating period violated the regulations. The excessively short period also denied them due process by failing to provide reasonable time for participation in the nominating process. Defendants argue that the short nominating period was both necessary and permissible under the regulations.

Plaintiffs argue that defendants ignore parts of their own regulations. Defendants complied with regulations requiring that the elections be held in June and nominating petitions submitted at least 20 days prior to the election. According to plaintiffs, however, defendants ignored their own requirement that farmers have 25 days to learn of the upcoming election, obtain a nominating petition from an FmHA office, obtain the necessary signatures, and file a petition. Plaintiffs further argue that the brief five-day nominating period, which included a weekend, made it impossible for many to file petitions, especially considering the novelty of the election process.

The court need not consider all of these arguments at this time. Defendants' argument rests on the challenged regulations and is therefore inextricably tied to them. For this reason count 4 should not now be dismissed.

*Counts 2 and 3*

Counts 2 and 3 of the first amended complaint are constitutional challenges to the regulations. Count 2 alleges that the regulatory restrictions on eligibility for committee service violate the constitutional guarantee of equal protection. Count 3 alleges that § 2054.1104(d) violates the right to free speech.

Plaintiffs assert that the court must apply the standard of strict scrutiny because the regulations have a "real and appreciable impact" on the fundamental right to run for public office. *E.g. Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *Mancuso v. Taft*, 476 F.2d 187 (1st Cir.1973). Defendants rely on the established constitutionality of the Hatch Act to support the validity of § 2054.1104(d). Alternatively, they argue for review of both challenged sections under the more restricted rational basis test. Relying on *Salyer Land Co. v. Tulare Lake Basin Water Storage District*, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973), *Antonio v. Kirkpatrick*, 579 F.2d 1147 (8th Cir. 1978), and *St. Louis County v. City of Town & Country*, 590 F.Supp. 731, 738–39 (E.D.Mo.1984), they contend that strict scrutiny applies only to broad limitations on eligibility for public office, not to restrictions relating to "partially-elected bodies of limited purpose whose activities primarily affect FmHA borrowers."

■ The court declines to reach defendants' motion to dismiss these counts at this stage in the litigation. Although the parties consider the proper standard of review an easy question, it is actually both complex and novel. None of the cases cited are squarely on point, and the parties' legal arguments are not fully developed. It is not yet clear whether development of the factual record will clarify the issues before

the court. Courts should avoid constitutional adjudication where the case may be decided on other grounds. *E.g. Rescue Army v. Municipal Court of Los Angeles,* 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947); *Ashwander v. TVA,* 297 U.S. 288, 346–348, 56 S.Ct. 466, 482–483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). There is nothing in this case to suggest that the parties will be prejudiced or the litigation prolonged if the court declines to consider the parties' constitutional arguments unless and until it becomes necessary to do so. Under the circumstances of this case, such deferral is the proper course. Counts 2 and 3 will not be dismissed at this time.

### ORDER

Based on all the above, and all the files, records and proceedings herein, it is hereby ordered that defendants' motion to dismiss is denied.