Sam HEDGE, Jim Stengrim, William Decker, Lowell Nelson, individually, on behalf of themselves and others similarly situated, Plaintiffs,

v.

Richard E. LYNG, Secretary of the United States Department of Agriculture; Vance Clark, Administrator of the Farmers Home Administration; Russ Bjorhud, Minnesota State Director of the Farmers Home Administration, Defendants.

Civ. No. 4–86–610.

United States District Court,
D. Minnesota,
Fourth Division.

March 3, 1988.

Juliet M. Tomkins, and James T. Massey, Farmers' Legal Action Group, St. Paul, Minn. for plaintiffs.

William Robert Irvin, Dept. of Justice, Civil Div., Washington, D.C. for defendants.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

Farmers Sam Hedge, Jim Stengrim, William Decker, and Lowell Nelson bring this action as representatives of a class of farmers. They seek injunctive and declaratory relief against the Secretary of Agriculture and the Administrator and Minnesota

State Director of the Farmers Home Administration (FmHA). Plaintiffs challenge the legitimacy of regulations governing FmHA County Commissioner elections and 1986 elections held under those regulations. The second amended complaint alleges violations of the Food Security Act of 1985, the Administrative Procedures Act (APA), FmHA regulations, and of constitutional rights to equal protection and freedom of association. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331, 1361, and 2201.

This matter has been before the court on previous occasions. A motion by defendants to dismiss was denied last June. *See* Memorandum Opinion and Order, 689 F.Supp. 877 (D.Minn.1987). In that same month the court also denied plaintiffs' motion for a preliminary injunction, permitted them to file a second amended complaint, certified a class action, and deferred ruling on plaintiffs' motion for summary judgment. *See* Memorandum Opinion and Order, 689 F.Supp. 884 (D.Minn.1987). Then in August the court ruled that plaintiffs might bring their claims on behalf of a class defined as:

> All farmers in the State of Minnesota who are eligible to vote in FmHA county committee elections, but ineligible to run for county committee membership under 7 C.F.R. § 2054.1104(d) and (f).

Memorandum Opinion and Order, 689 F.Supp. 884 (D.Minn.1987).

The matters now under consideration are cross motions for summary judgment and plaintiffs' motion to amend the class. Defendants move for summary judgment on all claims. Plaintiffs initially sought summary judgment on all claims except portions of claims one and two which challenge the exclusion of "politically active persons" from candidacy for the FmHA county committees. Plaintiffs now assert that disputed facts may also preclude summary judgment on the "borrower exclusion" portions of claims one and two. Numerous memoranda have been submitted by each side and oral argument has been held.

## I.

The background facts are substantially undisputed. FmHA is a federal agricultural and rural development agency. It is the lender of last resort for farmers and ranchers seeking to finance their operations or improve their property. 7 U.S.C. §§ 1921–2000. Wherever FmHA operates its farm loan programs, it must establish a three member "county committee." 7 U.S.C. § 1982(a) (1982). These committees have numerous functions, including determining eligibility for certain types of loans; making recommendations regarding "problem cases" and applications for compromise, adjustment or cancellation of debts; and advising the FmHA county supervisor on certain matters. 7 C.F.R. § 2054.1103(a). Certification by the county committee is a prerequisite for obtaining certain loans. *See, e.g.,* 7 C.F.R. §§ 1941.-33 and 1943.33 (1987).

Before 1985, the Secretary of Agriculture (the "Secretary") appointed all three members of each county committee. 7 U.S.C. § 1982 (amended 1985). Under the Food Security Act of 1985, Pub.L. 99–198, 99 Stat. 1354, however, two of the three county committee members are to be elected by the farming community:

> In each county or area in which activities are carried out under this chapter, there shall be a county committee composed of three members. Two members shall be elected, from among their number, by farmers deriving the principal part of their income from farming who reside within the county or area, and one member, who shall reside within the county or area, shall be appointed by the Secretary for a term of three years. At the first election of county committee members under this subsection, one member shall be elected for a term of one year and one member shall be elected for a term of two years. Thereafter, elected members of the county committee shall be elected for a term of three years. The Secretary, in selecting the appointed member of the county committee, shall ensure that, to the greatest extent practicable,

the committee is fairly representative of the farmers in the county or area. The Secretary may appoint an alternate for each member of the county committee. Appointed and alternate members of the county committee shall be removable by the Secretary for cause. The Secretary shall issue such regulations as are necessary relating to the election and appointment of members and alternate members of the county committees.

7 U.S.C. § 1982(a) (1985).

As required by statute, the Secretary, acting through FmHA, developed regulations. He did not, however, comply with the general APA procedure, which requires a notice of proposed rulemaking and a comment period before final regulations are published.[1] Rather, without notice, the Secretary published interim final regulations on May 22, 1986. The regulations were effective on May 28, 1986 and provided for a *post hoc* thirty day notice and comment period following publication.

Under these regulations, FmHA borrowers and their spouses and dependent children were not eligible to hold committee positions. 7 C.F.R. § 2054.1104(f) (1987). Political party officers or employees, or persons "active in the management or affairs of any political club organization, or committee" were also ineligible to be committee members. 7 C.F.R. § 2054.1104(d) (1987).

The interim final regulations also provided that the county committee elections must be held in June, § 2054.1105(a) (1987), and that the period for nominating by petition "should begin 45 days and end 20 days before election." § 2054.1111(b)(1) (1987). The opportunity to nominate had to be announced at least in local publications of general circulation. § 2054.1111(b)(2) (1987). Nominating petitions required three signatures, but nominees could sign their own petitions. § 2054.1111(b)(4) (1987). No one could sign more than one nominating petition. *Id.*

On May 28, 1986, the Administrator of FmHA (the "Administrator") issued a "Procedure Notice" adopting the May 22 regulations and setting a calendar for the 1986 county committee elections. The county supervisors were to publish notice of the nominating period by Thursday, June 5, 1986, but to accept petitions only until Tuesday, June 10, 1986. The June 1986 elections were held pursuant to the interim final rules. Minnesota elections were held for each of 57 county committees.

The plaintiffs' complaint challenges numerous aspects of these 1986 elections and the regulations under which they were conducted. Plaintiffs claim first that the exclusion of FmHA borrowers and their spouses and dependent children (the "borrower exclusion") from eligibility to serve on county committees violates the APA because it is arbitrary and capricious (Claim 1) and violates the farmers' and electorate's right to equal protection under the Constitution (Claim 2). Plaintiffs also claim that the exclusion of farmers involved in partisan political activities (the "politically active" exclusion) violates the APA (Claim 1), and violates the excluded farmers' and the electorate's right to equal protection (Claim 2) and free association (Claim 3). Plaintiffs further claim that the defendants violated their own 1986 interim final regulations by allowing only a five day nominating period (Claim 4), and violated the APA notice and comment requirements in the promulgation of the 1986 interim final regulations (Claim 5). Finally, plaintiffs allege that the FmHA violated its interim final regulations through procedural irregularities in the conduct of the 1986 elections (Claim 6).

After the initial memoranda had been filed for the cross motions for summary judgment, the FmHA replaced the interim final regulations with final regulations. 52 Fed.Reg. 30889–30898 (effective August 18, 1987) to be codified at 7 C.F.R. 2054.-1101 *et seq.* (1988) (final regulations). The final regulations slightly revise the interim final regulations. Most notably, they provide that the "borrower" and "politically

---

**1.** The FmHA is bound by a self-imposed rule to comply with APA procedure in promulgation of these regulations. 36 Fed.Reg. 13804 (July 24, 1971).

active" exclusions do not attach to mere candidates, so long as the candidate certifies that he or she will meet the qualifications for committee membership if elected. 52 Fed.Reg. 30893 (Aug. 18, 1987), (to be codified at 7 C.F.R. § 2054.1111(c)(4) (1988)).[2] The preliminary comments to the final regulations also attempt to explain the "politically active" exclusion: "County committee members are intermittent Federal employees and as such are covered by the provisions of the Hatch Act which circumscribe activities in partisan politics." 52 Fed.Reg. 30890 (Aug. 18, 1987). The final regulations also revise the "borrower" exclusion by barring borrowers, their spouses, or family members living in the same household from participating as committee members, 52 Fed.Reg. 30895 (Aug. 18, 1987) (to be codified at 7 C.F.R. § 2054.1104(g) (1988)).

The final rules were adopted after the Administrator considered comments received during the 30 day comment period provided. The final regulations state that the Administrator considered the comments, and modified the regulations in response to some. *See Supplementary Information,* 52 Fed.Reg. 30889–30893 (Aug. 18, 1987).

## II.

The defendants urge summary judgment in their favor for plaintiffs' lack of standing to challenge portions of the second amended complaint. They argue that for several claims no named class member has a particular injury that is fairly traceable to the challenged action and redressable by the relief sought. *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982). Defendants argue, for instance, that none of the four named plaintiffs claims to be a spouse or dependent child of any borrower (Claims 1 and 2). They also allege that there is no causal link between the shortened nominating period and the

injuries alleged (Claim 4), since plaintiffs could still have made nominations but for "their own inactivity, not the length of the nominating period." Defendants' Memorandum in Support of Summary Judgment, at 10. Defendants further argue that none of the class representatives was injured by the failure to provide a notice and comment period before the FmHA adopted the interim final rules, since none of the plaintiffs sought to comment during the thirty day post-issuance comment period. Defendants finally argue that each alleged injury arising from 1986 election irregularities is merely conjectural or hypothetical and not sufficiently concrete to confer standing. This is because most violations occurred in counties not associated with the class representatives.

The plaintiffs respond by acknowledging that in a class action as here, the named plaintiffs must allege specific injuries to themselves rather than allege generalized claims of injury to unidentified class members. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 40, n. 20, 96 S.Ct. 1917, 1925, n. 20, 48 L.Ed.2d 450 (1976). They argue, however, that for each claim raised they have shown sufficiently specific and direct injury to themselves. They assert that Jim Stengrim, William Decker and Lowell Nelson are all FmHA borrowers who were prohibited by the interim final regulations from placing their names in nomination. Each had insufficient notice of the proposed interim final regulations and of the 1986 nominating process. Additionally, Mr. Decker claims he is active in partisan political activities and thus barred from committee membership by the "politically active" exclusion. The plaintiffs have variously alleged that the interim final regulations hindered them from nominating and voting for candidates of their choice in 1986.

The standing requirement assures that federal courts decide only actual cases and controversies as required by Article III of the Constitution. *Heckler v. Mathews,* 465

---

**2.** Plaintiffs argue that this change is not a clarification of the interim regulations, but instead a new position taken in response to this litigation.

U.S. 728, 739, 104 S.Ct. 1387, 1395, 79 L.Ed.2d 646 (1984). It guards against courts becoming "no more than a vehicle for the vindication of the value interests of concerned bystanders." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973). At the same time, the standing requirement should not bar plaintiffs seeking relief from specific and direct harm. *See SCRAP*, 412 U.S. at 688–89, 93 S.Ct. at 2416.

▪ Here the plaintiffs have sufficiently alleged particularized injuries for each of the claims raised in the second amended complaint. Plaintiffs need not be "spouses or family members" to challenge the borrower exclusions; three of the four class representatives are FmHA borrowers (Stengrim, Decker and Nelson).

The alleged injury arising from plaintiffs' inability to comment before adoption of the interim final regulations is not diminished by the *post hoc* comment period provided. The FmHA's offer to receive comments after promulgation of the regulation is an inferior substitute for prior notice and comment. *United States Steel Corp. v. Environmental Protection Agency*, 649 F.2d 572, 576 (8th Cir.1981). The plaintiffs' injury is sufficiently direct and real to confer standing despite remedial steps taken by the FmHA after this litigation commenced. The shortened nominating and election period also afforded each plaintiff less opportunity to participate than would have been available under the thirty-day period suggested by the regulations. Each named plaintiff alleges that he would have participated had the process not been shortened.

▪ Plaintiffs have each therefore alleged direct and concrete injury, sufficient to confer standing. The class representatives need not show that each plaintiff was injured by every allegation in the complaint. Rather, the action may proceed so long as each named plaintiff claims some direct injury, *Simon*, 426 U.S. at 40, 96

S.Ct. at 1925, and common issues of law predominate. *See Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir.1980). Plaintiffs meet this requirement, and their action should not be dismissed for lack of standing.

### III.

Claim one alleges that the exclusion of FmHA borrowers, their spouses, and dependent children from eligibility to serve on county committees (the "borrower" exclusion) is arbitrary and capricious and violates the APA, 5 U.S.C. § 706. Count one similarly alleges that the exclusion of officers or employees of a political party or persons active in any political club, organization or committee (the politically active exclusion) also violates § 706 of the APA.

### A.

▪ The interim final regulations challenged by the plaintiffs banned participation on county committees by "an individual (or spouse or dependent child of such an individual), ... with an outstanding loan insured or guaranteed by FmHA [with exceptions not applicable here]. 7 C.F.R. § 2054.1105(f) (1987).

Plaintiffs allege that this regulation undermines the Congressional intent behind the 1985 amendments to the Food Security Act, and is thus arbitrary and capricious. They argue that the 1985 amendments were intended to enhance the county committees' independence from the FmHA administrative structure. Congress intended that the FmHA county committees be locally controlled by elected farmers accountable to their peers and that the committees be modeled after the Agricultural Stabilization and Conservation Service (ASCS) committees which do not ban participants from serving. H.R.Rep. No. 271, Part 1, 99th Cong. 1st Sess., pp. 100–01 (September 13, 1985) *reprinted in* U.S.Code Cong. & Admin.News 1985, 1103, 1204–05 (hereafter H.R.Rep. No. 271). Plaintiffs further assert that the pre-existing conflict of interest statute, 7 U.S.C. § 1986(c) (1984),[3] is a

3. No member of a county committee shall

knowingly make or join in making any certifi-

sufficient protection against the appearance of financial improprieties. The regulations are therefore overly restrictive and arbitrarily and capriciously exceed the protections which Congress imposed.

Defendants respond that the "borrower" exclusion is consistent with the long-standing prohibition against committee members receiving loans, which applies to nearly all FmHA employees. *See* FmHA Instruction 2045–BB, § 2045.1155(h), Defendants Exhibit J. Instruction 2045–BB includes as employees "all FmHA personnel, including County or Area committeemembers [sic] except as otherwise specifically stated." *Id.* § 2045.1352 Definitions (g). Defendants further argue that even without regarding committee members as employees governed by the long-standing prohibition, the regulation is still necessary to avoid even the appearance of impropriety. The committees determine eligibility of loan applicants, make recommendations involving problem loans, and consider the compromise, adjustment, and cancellation of indebtedness. The prohibition of borrowers from committee participation is therefore a logical extension of the statutory conflict of interest requirements of 7 U.S.C. § 1986(c) and within the agency's discretion to impose.

The court's review of this issue is a narrow one. The FmHA's "borrower" exclusion should be set aside only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. APA § 706(2)(A). *See Brotherhood of Railway and Airline Clerks v. Burlington Northern, Inc.*, 722 F.2d 380 (8th Cir. 1983). An agency's action is arbitrary and capricious when it is not supported by any rational basis. *Id.* at 381, *citing Churchill Truck Lines, Inc. v. United States*, 624 F.2d 63, 65 (8th Cir.1980). In considering the agency action, the court may not substitute its judgment for that of the agency. *See Citizens to Preserve Overton Park Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

The FmHA's long-standing ban against borrowers serving on county committees serves the rational purpose of avoiding the appearance of a conflict of interest. With the 1985 amendments to the Food Security Act, Congress intended farmers to "play an important role in making those decisions which affect them and their neighbors," H.R.Rep. No. 271 at 101, U.S.Code Cong. & Admin.News 1985, at 1205, and to "have a voice in selecting those who [make] decisions about [their] future." H.R.Rep. No. 271 at 102, U.S.Code Cong. & Admin.News 1985, at 1206. These goals are not unreasonably hindered by the "borrower" exclusion which prohibits only committee membership by borrowers, not participation in voting and campaigns.

The parties dispute at great length whether elected committee members are employees of the FmHA and are thus affected by the prohibition against borrowers being employees. The court need not reach this issue, however, because the "borrower" exclusion is reasonable whether or not elected county committee members are considered employees. Defendants are therefore entitled to summary judgment on the "borrower" exclusion portion of plaintiffs' first claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B.

■ The interim final regulations prohibited the candidacy of "an officer or employee of a political party, or [one who is] active in the management or affairs of any political club, organization or committee...." 7 C.F.R. § 2054.1104(d) (1987). Plaintiffs allege that this "politically active" exclusion is an arbitrary and capricious restriction on eligibility, not authorized by statute, and contrary to congressional intent.

The defendants move for summary judgment, arguing that plaintiffs' claim is mooted by the final regulations which define elected committee members as federal employees. They argue that the exclusion is

cation with respect to a loan to purchase any land in which he or any person related to him within the second degree of consanguinity or affinity has or may acquire any interest or

with respect to any applicant related to him within the second degree of consanguinity or affinity.
7 U.S.C. § 1986(c) (1984).

no broader than the Hatch Act,[4] which Congress has long-intended be applied to county committee members. *See* S.Rep. No. 566 87th Cong. 1st Sess. at 73 (July 17, 1961). They therefore argue that plaintiffs' claim presents no case or controversy and should be dismissed as moot. *DeFunis v. Odegaard*, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

Plaintiffs respond that the "politically active" exclusion should not apply to elected committee members who are arguably not federal employees. They argue that Congress intended elected committee members to be more independent from the FmHA than in the past:

> Although the many fine and dedicated county committee members now serving are to be commended for their work, it is the system itself which precludes the sort of independence which is needed.

H.R.Rep. No. 271, U.S.Code Cong. & Admin.News 1985, 1103. Congress therefore no longer necessarily intended the Hatch Act to apply to elected committee members since their function has changed. Plaintiffs argue that resolution of this dispute requires analysis of the committees' current function. They allege numerous disputed facts regarding the employee issue and argue that summary judgment is therefore unavailable.

The parties agree that the relevant definition of employee is found at 5 U.S.C. § 2105(a) (1979), which provides in relevant part:

> "[e]mployee" ... means an officer or individual who is—
>
> (1) appointed in the civil service by one of [numerous government officials] acting in an official capacity ...
>
> (2) engaged in the performance of a Federal function under authority of law or an Executive act; and
>
> (3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

There are three elements to the statute—appointment, federal function, and supervision—and "all must be complied with to achieve the status of employee." *McCarley v. Merit Systems Protection Board*, 757 F.2d 278, 280 (Fed.Cir.1985).

The parties agree that the elected committee members perform a federal function, but they disagree about whether they are "appointed" and "subject to supervision" under § 2105. Defendants assert that both tests are satisfied. They argue that under both the interim and final regulations, elected committee members are "appointed" to the federal civil service on an intermittent basis. 7 C.F.R. § 2054.1102 (1987); 52 Fed.Reg. 30890 (Aug. 18, 1987). They further argue that, as a factual matter, committee members are indisputedly supervised directly by FmHA county supervisors, and indirectly by defendants Bjorhud, the state director, and Clark, Administrator of FmHA.

Defendants argue the elected members have great similarities to FmHA employees hired in the past. All take the same oath, fill out the same accident report form, and receive the same workers compensation coverage. Removal of an elected committee member is accomplished similarly to removal of appointed members—by the state director, for cause, after referral by the county supervisor.

Plaintiffs, on the other hand, argue that elected officials cannot be "appointed" and do not fall within the Title 5 definition of employee. Furthermore, they allege that defendants' claims to supervise county committee members are inconsistent with actual practice and with congressional intent.

Defendants are not entitled to summary judgment solely because county committee members have in the past been considered employees and the new regulations designate them so. With the 1985 amendments Congress intended to enhance the new elected committees' independence from the

---

**4.** Although the regulation seems to read more broadly than the Hatch Act, the FmHA interprets it as a restriction only on partisan political activities, *see* FmHA Instruction 2045–CC, and merely a restatement of the Hatch Act. Memorandum in Support of Defendants' Motion for Summary Judgment, at 30.

FmHA administrative structure. Determining whether elected committee members are federal employees requires inquiry into disputed facts regarding "appointment" and "supervision." If elected committee members are not federal employees, then the "politically active" exclusion seems unreasonable and plaintiffs would likely prevail. Summary judgment for the defendants should therefore be denied.

### IV.

█ Plaintiffs allege that the "borrower" and "politically active" exclusions deprive them of equal protection and abridge their rights of freedom of association and expression under the Constitution. Their contention is that the right to serve on a FmHA county committee and the right to vote for a broad field of candidates is a fundamental right and subject to strict scrutiny. *Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (restrictions that place a real and appreciable limitation on voting or candidacy are generally subject to strict scrutiny); *Mancuso v. Taft,* 476 F.2d 187 (1st Cir.1973) (strict scrutiny applies to blanket prohibitions against public employees being candidates for public office).

Defendants respond that no fundamental rights are implicated in these elections. The elections involve a strictly limited group of participants (farmers), vying for positions on a special purpose organization which does not perform any broad public service. The restrictions are therefore constitutional because they promote a legitimate governmental concern. *Salyer Land Co. v. Tulare Lake Basin Water Storage District,* 410 U.S. 719, 728–29, 93 S.Ct. 1224, 1229–30, 35 L.Ed.2d 659 (1973) (rational basis test applied to elections for special limited purpose bodies whose activities have a disproportionate impact on a particular group). "[N]ot every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review." *Bullock v. Carter,* 405 U.S. at 143, 92 S.Ct. at 856. Only those restrictions which have a "real and appreciable impact" on fundamental rights are afforded strict scrutiny; otherwise a traditional standard of review is used. *Antonio v. Kirkpatrick,* 579 F.2d 1147, 1149 (8th Cir. 1978).

The issue of whether fundamental rights are implicated in elections for FmHA county committees was recently addressed in *Sullivan v. Farmers Home Administration,* 691 F.Supp. 927 (E.D.N.C.1987). There plaintiffs challenged the constitutionality of the same FmHA interim final regulations, as applied to elections for North Carolina county committees. The court stated:

> The County Committees are not vested with normal governmental functions but rather act as boards of loan officers for deciding matters regarding FmHA loans. As such, the court concludes that the regulations governing elections of FmHA County Committees members are not regulations dealing with a fundamental right and, therefore, properly are reviewed under rational relation standard.

*Sullivan,* at 935. After careful consideration of the function of the county committees, this court adopts the same conclusion. County committees do not exercise general governmental powers. Rather, they are partially-elected bodies whose primary function is the limited and special purpose of approving and administering agricultural loans. Since election of candidates for these positions implicates no fundamental rights, the eligibility restrictions are constitutionally permissible if they are rationally related to a legitimate governmental interest, or unless they are "wholly irrelevant to the achievement of the [agency's] objectives." *Sayler,* 410 U.S. at 730, 93 S.Ct. at 1231.

█ The two exclusions must be examined separately. As stated, the "borrower" exclusion serves the useful purpose of avoiding the appearance of a conflict of interest by committee members. It is therefore rationally related to a legitimate concern and is constitutional. The "politically active" exclusion, on the other hand, seems reasonable only if elected committee members are found to be federal employ-

ees. Defendants have proposed no other rational basis for barring elected county committee from engaging in partisan political activity other than their claim that committee members are federal employees subject to the Hatch Act. That issue requires resolution of disputed facts and cannot be decided on these cross motions for summary judgment. Defendants' motion for summary judgment on the constitutionality of the "borrower" exclusion should therefore be granted; their motion on the "politically active" exclusion should be denied.

Plaintiffs also claim that the "politically active" exclusion deprives farmers of their rights to freedom of association and expression. (Claim Three) The right to participate in county committees is not a fundamental right, however. Additionally, insofar as this claim challenges the prohibition against candidates, it is mooted by the FmHA's concession in the final regulations that the exclusion applies only to elected members, not candidates. 52 Fed.Reg. 30893–94 (August 18, 1987). And as applied to the committee members, the "politically active" exclusion is no broader than the Hatch Act which has consistently been held constitutional under First Amendment challenge. *See e.g., United States Civil Service Commission v. National Association of Letter Carriers, AFL–CIO,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973). Defendant's motion for summary judgment on Claim Three should therefore be granted.

### V.

█ Plaintiffs allege that the FmHA violated its own interim final regulations in 1986 by not allowing a twenty-five day nominating period before conducting the county committee elections. The parties agree that the June 1986 elections followed a five-day nominating period.

The interim final regulations required that "the period for nominating by petition *should* begin 45 days and end 20 days before the election date." 7 C.F.R. § 2054.1111(b)(1) (1987) (emphasis added). Defendants interpret the word "should" as nonmandatory, and claim that the shortened nominating period was necessary under the circumstances and did not violate the interim final regulation. They were faced with pressing time deadlines since the regulations were promulgated in May of 1986 and required elections in June. 7 C.F.R. § 2054.1105(a) (1987). They argue that the shortened nominating period was a reasonable exercise of permissible discretion, and summary judgment should be granted in their favor.

Plaintiffs respond that an agency is entitled to deference in interpreting its own regulations, but if that interpretation is plainly erroneous or inconsistent with the regulation it is not controlling. *Abbott–Northwestern Hospital, Inc. v. Schweiker,* 698 F.2d 336, 340 (8th Cir.1983). Plaintiffs argue that the word *should* in the regulations indicates mandatory intent and must be interpreted to require a full twenty-five day nominating period. They argue that the shortened period was an impermissible exercise of discretion and plaintiffs are therefore entitled to summary judgment.

When the disputed language is viewed in conjunction with its accompanying provisions, the defendants' claim that the term *should* implies no mandatory intent is persuasive.[5] Only in the provision regarding

---

5. The entire text of § 2054.1111(b) is as follows:

(b) *Developing slates of nominees.* Nomination by petition *shall* be the method used for developing slates of nominees.

(1) The period for nominating by petition *should* begin 45 days and end 20 days before the election date.

(2) The opportunity to nominate by petition *shall* be announced in official county newspapers or other publications in general circulation serving county or area and, if possible, through public service announcements on radio and television stations serving the area.

In addition, notices *shall* be posted in all FmHA offices within the area. The Notice of Right to Nominate by Petition *shall* be completed by the County Supervisor and read as set forth in Exhibit A of this subpart (available in any FmHA office).

(3) The minimum number of eligible nominees for a slate is one per vacant elected committee member position. The State Director or designated staff *may* solicit nominations to complete the slate.

(4) At least three eligible voters (including the nominee) within the county or area *must*

the nominating period did the drafters use *should* rather than the more emphatic command *shall*. The FmHA's interpretation which permitted a discretionary shortening of the nominating period is not clearly erroneous or inconsistent with the regulation. *Accord, Sullivan,* No. 87–110–CIV–5 slip op. at 23–24 at ——. Defendants' motion for summary judgment should therefore be granted, and this claim of plaintiffs should be dismissed.

## VI.

■ Plaintiffs allege that the FmHA violated § 553 of the APA by failing to provide notice of the adoption of interim final regulations and an opportunity for public comment.[6] The parties agree that the interim final regulations were promulgated on May 22, 1986 without any advance notice published in the Federal Register. Instead, public comments were received for thirty days after the regulations became effective. Plaintiffs argue that this method of rulemaking is impermissible since it did not fit within the narrow "good cause" exceptions to the APA's notice and comment requirements.[7] *See United States v. Gavrilovic,* 551 F.2d 1099 (8th Cir.1977); *New Jersey Dept. of Environmental Protection v. United States Environmental Protection Agency,* 626 F.2d 1038 (D.C.Cir. 1980) (good faith exception to notice and comment requirement narrowly construed). Plaintiffs therefore seek summary judgment on their claim. As a remedy they request a judgment declaring the interim final regulations illegal in their entirety, a judgment declaring null and void any county committee elections held under the inter-

im final regulations, an order enjoining the FmHA from denying any loan to a class member based on actions by county committees elected under the interim final regulations, an order requiring promulgation of new proposed regulations, and new elections under those regulations. Second Amended Complaint, Requested Relief and Judgment, paragraphs 1–12, at 21–23.

Defendants respond that their expedited adoption of the interim final regulations was a proper exercise of discretion under the good faith exception. They argue, however, that the court should not reach the merits of the good faith exception argument because plaintiffs' claims under § 706 of the APA are moot. Defendants allege that the FmHA has already provided the only relief plaintiffs could be entitled to— publication of revised regulations after providing a reasonable period for comment by the public. *United States Steel Corporation v. Environmental Protection Agency,* 649 F.2d 572 (8th Cir.1981).

Defendants argue that after the interim final regulations were promulgated, the Secretary provided a 30 day period for public comment. 52 Fed.Reg. 18763 (1987). The FmHA received and considered several comments and used them to develop final regulations, promulgated on August 18, 1987. *See* 52 Fed.Reg. 30889–893 (August 18, 1987) (extensive discussion of comments received). *See also American Transfer and Storage Co. v. Interstate Commerce Commission,* 719 F.2d 1283 (5th Cir.1983); *Coalition of Michigan Nursing Homes, Inc. v. Dempsey,* 537 F.Supp. 451, 459 (E.D.Mich.1982) (after-the-fact notice and

---

sign a nominating petition in order for it to be valid. No one *may* sign more than one nominating petition.
(5) All eligible nominees nominated by valid petition *shall* be included on the slate for county committee. (emphasis added)

**6.** Section 553 reads in part:
(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law....
(c) After notice required by this section, the agency shall give interested persons an oppor-

tunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose....

**7.** Advance notice of rulemaking is not required when "the agency, for good cause ... finds that notice and public procedure thereon are impracticable, unnecessary, or contrary to public interest." 5 U.S.C. § 553(b)(B).

comment is a reasonable remedy when agency must act immediately). Defendants argue that under the circumstances, plaintiffs are entitled to no further relief and their claim is moot.

In *United States Steel*, cited by both parties, the Eighth Circuit reviewed a challenge to the Environmental Protection Agency's (EPA) adoption of a final rule establishing state-wide air quality designations. The EPA adopted the designations after invoking the good faith exception to APA, 5 U.S.C. 553, and dispensing with prior notice and comment. The EPA instead offered to receive public comment for sixty days after promulgation. *United States Steel*, 649 F.2d at 574–75. The court held that the EPA erred by failing to provide advance notice and comment.[8] The court noted that the sixty day *post hoc* comment period was an inadequate substitute for prior notice and comment when there was no indication that the agency would thereafter consider revising the regulations: "After the final rule is issued, the petitioner must come hat-in-hand and run the risk that the decisionmaker is likely to resist change." *United States Steel*, 649 F.2d at 576, *quoting Sharon Steel Corp. v. Environmental Protection Agency*, 597 F.2d 377 (3rd Cir.1979). The remedy for that violation, however, was not the sweeping relief of dismantling the improperly adopted designations sought by the petitioner, but was more limited. The court left the EPA's air quality designations in place pending further administrative proceedings. It remanded the action to the EPA to afford the petitioners notice and an opportunity to comment on the new proposed designations. The EPA was ordered to consider the comments and to substitute any revised designations for the existing ones. *United States Steel*, 649 F.2d at 577. *Accord Western Oil and Gas Association v. United States Environmental Protection Agency*, 633 F.2d 803 (9th Cir. 1980).

Defendants argue that by providing the public with a thirty day comment period and considering those comments in developing the final regulations, they have paralleled the remedy prescribed in *United States Steel*, and voluntarily provided the only relief to which plaintiffs could be entitled.

Plaintiffs respond that the *post hoc* comment period was not a proper substitution for prior notice and comment, and the *EPA* cases are inapplicable to this dispute. They argue that in the *EPA* cases the Eighth and Ninth Circuits refused to rescind the improperly adopted regulations because they were "concerned with interfering with a complex process, the results of which were unpredictable ... [whereas with the FmHA's regulations] there are not any undesirable consequences that cannot be forseen and addressed if the regulations are set aside while the FmHA goes through the process of properly promulgating regulations...." Plaintiffs' Response to Defendants' Supplemental Memorandum, September 10, 1987, at 6. In making this argument, plaintiffs may overlook the nature of the relief which they request. For instance, plaintiffs ask the court to set aside all past county committee elections, to order a new comment period and subsequent revised regulations, to enjoin the FmHA from denying loans to any class members, and more. Such relief could cause unforseen and undesirable consequences, including possible disruption to rural and agricultural financing and loan management.

Another reason why the court in *United States Steel* required repromulgation of the air quality standards was its fear that *post hoc* comments, with nothing more, would not provide the petitioners with an effective opportunity to influence the agency's actions. *United States Steel*, 649 F.2d at 576, *citing United States Steel Corp. v. United States Environmental Protection Agency*, 595 F.2d 207 (5th Cir.1979) *modified on rehearing*, 598 F.2d 915 (5th Cir. 1979). Such is not the case here. When the identical issue was discussed in *Sullivan*, the court stated:

---

**8.** The court noted six cases in the circuit courts which had addressed the same issue, with differing outcomes (the *EPA* cases). *See United States Steel*, 649 F.2d at 575.

The distinguishing factor between the EPA cases and this case is the continuation of the decision making process by FmHA after the promulgation of the "interim" final regulations. The fundamental issue is whether plaintiffs were afforded adequate opportunity for meaningful participation in the decision making process. Here, the answer is yes. Unlike the EPA, FmHA clearly remained receptive to information and argument submitted during the comment period.

*Sullivan,* No. 87–110–CIV–5, slip op. at 11–12.

After careful consideration the court finds that the only relief plaintiffs would be entitled to in this area has already been provided by the FmHA. Even if plaintiffs prevailed on their claim, the appropriate relief would be an opportunity for public comment, and then adoption of new regulations after the FmHA considered the comments it received. *See United States Steel,* 649 F.2d at 576 (the diverse remedies ordered in the various EPA cases reflect the power of courts to fashion the relief most appropriate to the circumstances). That action has already been taken by the FmHA, and is reflected in the recently-issued final regulations. Therefore plaintiffs' claim is moot. *Iron Arrow Honor Society v. Heckler,* 464 U.S. 67, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983). Their claim under § 553 of the APA should be dismissed. *Accord, Sullivan,* No. 87–110–CIV–5, slip op. at 14.

## VII.

■ Plaintiffs allege in claim 6 that the conduct of county committee elections violated the FmHA's own regulations. They state that to withstand judicial scrutiny the agency must have acted within its statutory authority, and it must have conformed to the procedural requirements of the APA and to its own internal procedures. *Oglala Sioux Tribe of Indians v. Andrus,* 603 F.2d 707, 713 (8th Cir.1979). Plaintiffs claim that the FmHA violated numerous of its own regulations in the conduct of the 1986 elections and that in the process it frustrated the purpose of the 1985 amendments to the Food Security Act.

Plaintiffs' sworn declaration of Barbara J. Hoekstra summarizes discovery evidence revealing procedural irregularities in forty-five of the fifty-seven Minnesota elections conducted in 1986, all in violation of the FmHA's own regulations. Among the violations alleged are:

Nomination notices were not posted in 2 of 57 elections;

Nomination notices were not published in 4 of 57 elections;

Nomination notices were not published at least five days before the deadline for accepting nominating petitions in 15 of 57 elections;

Election notices were not published at least ten days before the election in 19 of 57 elections.

Voters were instructed to vote for only one candidate in 15 of 57 elections.

Voters were instructed to vote for three candidates in 1 election.

*See* Declaration of Barbara J. Hoekstra, Exhibit A to Declaration, at i–ii.

Defendants reply that none of the named plaintiffs has standing to challenge the alleged violations. They argue that the deposition of each of the four named plaintiffs makes clear that none was injured by the 1986 elections other than in a generalized or theoretical way. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 40, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976) (named plaintiffs must show injury in fact).

The court has noted, however, that plaintiffs have standing to bring each claim raised in this class action. The depositions and exhibits submitted thus far reveal that three of the named plaintiffs, (Stengrim, Decker, and Nelson) live in counties where the alleged deficiencies occurred, and all three have specifically alleged resulting injury. For instance, in the Warren office, where plaintiff Stengrim participates in FmHA programs, the plaintiffs allege, and defendants do not rebut, that election notices were not published at least ten days before the election, and voters were instructed to vote for only one candidate.

Plaintiff Nelson participates at the Milaca office where plaintiffs allege the notices of nomination were deficient and farmers were instructed to vote for only one candidate. In Long Prairie where plaintiff Decker participates, plaintiffs allege insufficient publication of the notice of nominations. *See* Declaration of Barbara J. Hoekstra, Exhibit B to Declaration, at 4. These allegations of violations are sufficiently particularized, and plaintiffs thus have standing to bring their sixth claim for relief.

Defendants next argue that if standing is found, then summary judgment in favor of plaintiffs is improper because numerous facts are in controversy. Defendants cite two examples where deposition testimony allegedly contradicts the facts stated in the Hoekstra declaration. First, defendants claim that the Long Prairie FmHA office announced the 1986 election at least ten days prior to the election. Deposition of William Decker, Exhibit C, at 32, 46–47; Depo. exhibit 15. Second, the Warren FmHA office provided the minimum five day period for submission of nominations. Deposition of James Stengrim, Exhibit B, p. 14; Depo. exhibit 5.

Defendants have not sufficiently shown, however, that their generalized assertions that the 1986 elections were properly conducted raise genuine issues of fact to preclude summary judgment under Fed.R.Civ. P. 56(c). Summary judgment in favor of the plaintiffs should therefore be granted on this claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hegg v. United States,* 817 F.2d 1328 (8th Cir.1987).

The plaintiffs have requested myriad forms of relief in their Second Amended Complaint, including new elections for county committees throughout the state. The elections held in June of 1986 were for one and two-year terms. The one year terms have expired, and the others are due to expire in June of 1988. Under the circumstances, appropriate relief consists of a declaration that the 1986 elections were conducted with numerous violations of the FmHA's regulations and an injunction against similar irregularities in the future. Plaintiffs are entitled to this relief.

## VIII.

The class is currently defined as:

All farmers in the State of Minnesota who are eligible to vote in FmHA county committee elections, but ineligible to run for county committee membership under 7 C.F.R. § 2054.1104 (d) and (f).

The FmHA has now adopted final regulations superseding the interim final regulations cited in the definition of the class. The final regulations also state that the regulations do not restrict candidacy for county committees so long as elected members become eligible to hold office once elected. 52 Fed.Reg. 30894 (August 18, 1987) (to be codified at 52 Fed.Reg. § 2054.1104 (1988)). The definition of the class should therefore be amended to:

All farmers in the State of Minnesota who are eligible to vote in FmHA committee elections, but ineligible to serve on a county committee under 52 Fed. Reg. 30894 § 2054.1104 (d) and (g) (August 18, 1987) (to be codified at 52 Fed. Reg. § 2054.1104 (1988)).

Plaintiffs' motion to amend the class in other regards is denied for reasons previously stated by the court in Memorandum Opinion and Order, 689 F.Supp. 884 (D.Minn.1987).

## IX.

With this order and those preceding it, the court has resolved all disputes between these parties except for the "politically active" exclusion issue. Determination of this issue requires resolution of disputed material facts. Those portions of claims one and two which relate to this issue and remain in controversy will be set on for trial unless the parties are able to resolve them.

## ORDER

Accordingly, based on the above, and all the files, records, and proceedings herein, It is hereby ORDERED that:

1. Defendants' motion for summary judgment on the "borrower" exclusion claims is granted; plaintiffs' motion for summary judgment on these claims is denied, and the "borrower" exclusion portions of claims one and two are dismissed.

2. Defendants' motion for summary judgment on the "politically active" exclusion portion of claims one and two is denied.

3. Defendants' motion for summary judgment on claims three, four and five is granted; plaintiffs' motion for summary judgment on claims three, four and five is denied, and the claims are dismissed.

4. Plaintiffs' motion for summary judgment on claim six is granted, and it is declared and adjudged that 45 of the 57 1986 elections for Minnesota FmHA county committee members were conducted in violation of 7 C.F.R. § 2054.1101 *et seq.* (1987) (superseded by 52 Fed.Reg. 30889–30898 (effective August 18, 1987)).

5. Defendants are enjoined in Minnesota from conducting future county committee elections in violation of FmHA regulations.

6. Defendants' motion for summary judgment on claim 6 is denied.

7. The plaintiff class is amended to:

All farmers in the State of Minnesota who are eligible to vote in FmHA committee elections, but ineligible to serve on a county committee under 52 Fed. Reg. 30894 § 2054.1104(d) and (g) (August 18, 1987) (to be codified at 52 Fed Reg. § 2054.1104 (1988)).